758 P.2d 713

**STATE of Idaho, Plaintiff–Respondent,**

v.

**Gregory E. HASS, Defendant–Appellant.**

No. 16845.

Court of Appeals of Idaho.

July 27, 1988.

Dennis S. Voorhees, Twin Falls, for defendant-appellant.

Jim Jones, Atty. Gen., Myrna A.I. Stahman, Deputy Atty. Gen., for plaintiff-respondent.

SWANSTROM, Judge.

Gregory Hass appeals from an order revoking his probation after the district court determined that Hass was in violation of its terms by possessing controlled substances. The court ordered Hass to serve two indeterminate seven-year concurrent sentences he had received after being convicted for two counts of first-degree burglary. On appeal, Hass contends that the report of probation violation failed to comply with a due process requirement of notice to Hass of the facts allegedly constituting the violation. He also contends that the court abused its discretion in revoking probation and by requiring the previously imposed sentences to be served. For reasons given below, we affirm.

In December 1986, pursuant to information obtained from an informant, Twin Falls police and local probation officers conducted a search of Hass' residence. Hass and two of his friends were present during the search. At the time Hass was on probation after pleading guilty to two counts of first-degree burglary. The search by the officers led to the seizure of various items, including drug paraphernalia and approximately an ounce of marijuana. The next day Hass underwent an urinalysis test for which he tested positive for cannabinoids. Later that day a violation report was filed with the district court alleging that Hass had violated his probation by the unlawful use or possession of controlled substances and drug paraphernalia.

At a hearing on the violations, various pipes, roach clips and other items described as drug paraphernalia found in the house were offered in evidence, as were the re-

sults of Hass' urinalysis. Police and probation officers also testified to finding marijuana in three separate places in the residence. The largest quantity, four separate bags along with a small amount of loose material, was found under a couch in the living room. Another bag was found in the pocket of a jacket on the couch. The last amount of marijuana was found in Hass' bedroom. Inside the room the officers found a pair of gloves. Three officers testified that in one of the gloves a cigarette package containing marijuana stems, seeds and chaff was discovered. At the hearing, Hass made no objection to this testimony. The items were not offered in evidence until a fourth officer testified. Hass then objected to the admission of the gloves and their contents on due process grounds, contending that they were not within the evidence included in the violation report. The violation report summarized the evidence seized in the search as "smoking devices believed to be drug paraphernalia, as well as a substance believed to be marijuana (29.80 grams packaged weight)." Hass contended the gloves and their contents were neither paraphernalia nor part of the marijuana quantity referenced in the report.

The district court admitted the items as evidence over the objections of Hass and found Hass guilty of the two violations based on the marijuana in the glove. The court concluded that the state had failed to establish Hass' ownership interest in the paraphernalia. This conclusion followed from Hass' testimony that another adult, staying with Hass at the time, owned the paraphernalia. Hass also denied ownership and knowledge of the four bags of marijuana found under the couch. The court failed to reach any conclusion regarding possession or ownership of this marijuana. The court also tacitly accepted Hass' argument that the positive urinalysis for cannabinoids was the result of "passive" ingestion of smoke from users of the drug at a recent party. The state did not argue or present any evidence that Hass owned the jacket in which the fifth bag of marijuana was found.

Hass' first contention is that the violation report failed to satisfy a due process requirement that he be apprised of the facts allegedly constituting a probation violation. His arguments are based in part on *Morrissey v. Brewer,* 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972), and *Gagnon v. Scarpelli,* 411 U.S. 778, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973). In these cases the U.S. Supreme Court set out due process requirements in probation and parole revocation proceedings. .

In *Morrissey* the Court began "with the proposition that the revocation of parole is not part of a criminal prosecution and thus the full panoply of rights due a defendant in such a proceeding does not apply to parole revocations." 408 U.S. at 480, 92 S.Ct. at 2600. However, the Court then held that the nature of the interest being protected in revocation proceedings, the loss of the parolee's liberty, was such that some procedural process, in accord with the fourteenth amendment, was due. The Court described the minimum requirements of due process at the revocation hearing to be:

(a) written notice of the claimed violations of parole; (b) disclosure to the parolee of evidence against him; (c) opportunity to be heard in person and to present witnesses and documentary evidence; (d) the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation); (e) a "neutral and detached" hearing body such as a traditional parole board, members of which need not be judicial officers or lawyers; and (f) a written statement by the factfinders as to the evidence relied on and reasons for revoking parole.

*Morrissey,* 408 U.S. at 489, 92 S.Ct. at 2604. *Gagnon* extended the due process protection of *Morrissey* to a probation revocation proceeding. The Court noted there was little "difference relevant to the guarantee of due process between the revocation of parole and the revocation of probation." *See also State v. Chapman,* 111 Idaho 149, 721 P.2d 1248 (1986).

Hass also calls attention to the case of *State v. Edelblute*, 91 Idaho 469, 424 P.2d 739 (1967), where the Idaho Supreme Court held that in a revocation hearing the probationer is to be advised of: (1) the alleged violated term or condition of probation, (2) the manner and circumstances of the violation, and (3) all pertinent information received by the court. The probationer was also to be given an opportunity: (a) to call witnesses, (b) to testify, (c) to produce evidence, and (d) rebut adverse evidence, including cross-examination of witnesses.

The pertinent objective of the procedural safeguards of *Morrissey* and *Edelblute* is the minimization of surprise so a parolee or probationer may prepare a meaningful defense. *Edelblute* describes the requirement of "charges sufficiently specific that the probationer be informed of the ... manner and circumstances of his violation," 91 Idaho at 480, 424 P.2d at 750, while *Morrissey* states the need for "disclosure to the parolee of evidence against him." 408 U.S. at 489, 92 S.Ct. at 2604. Hass' argument is centered on the failure of the violation report to specifically mention the cigarette package and the marijuana remnants contained within the package. Hass contends that this fails to satisfy the requirements of *Morrissey* and *Edelblute*.

█ · It is clear from the report, however, that Hass was not denied the notice required under *Morrissey* and *Edelblute*. Hass received direct notice of the claimed violations and the conduct which constituted the violations. The report stated that Hass had violated two conditions of probation; both related to "possession and use of the controlled substance, marijuana, as well as drug paraphernalia." In a "summary," the report stated:

On December 17, 1986, a probation search was conducted at the residence of Mr. Hass located at 654 Locust Street, Twin Falls, Idaho. Probation and Parole Officers, Michael Murray and Bill Graff, were assisted by officers of the Twin Falls Police Department in conducting the search. Items seized as evidence in the search included smoking devices believed to be drug paraphernalia, as well as a substance believed to be marijuana (29.80 grams packaged weight) which has been substantiated by a positive field test. Additionally, on the aforesaid date, Mr. Hass consented to submitting a urine sample. Testing of the sample on an EMIT–ST machine on 12–18–86, indicated positive for the presence of marijuana.

Possession and use of the controlled substance, marijuana, as well as drug paraphernalia, indicates a violation of the law (Special Condition # 5) and Rule # 8 of the agreement of supervision.

The circumstances of the case also convince us that Hass received an adequate disclosure of the evidence against him. While the violation report did not specifically mention the marijuana remnants, the report did adequately inform Hass that the violation was based upon evidence seized at the residence including marijuana and that the use or possession of marijuana would be part of the state's showing of the violation. This reasonably conveyed the required information to Hass in advance of the evidentiary hearing.

As noted above, Hass did not object at the hearing when three different officers testified to the fact that the gloves found in Hass' bedroom contained marijuana. Hass, who had been present when the search was conducted, never claimed surprise at this testimony. Nor has he ever contended that he was unaware the officers had seized this evidence from his bedroom. If in fact, Hass did not know about this evidence, he had ample opportunity upon hearing the testimony to request a continuance, if necessary, in order to explain or rebut the evidence presented. We will not establish a rule which requires a more specific statement in a violation report than Hass received.[1] The report adequately disclosed to Hass that the items seized in the search of his residence would

1. Cases exist which interpret *Morrissey* as not requiring either *written* notice of evidence, *Baker v. Wainwright*, 527 F.2d 372 (5th Cir.1976), or notice in advance of the revocation hearing, *Commonwealth v. Quinlan*, 251 Pa.Super. 428, 380 A.2d 854 (1977). This view has been modified by statute in some states, *e.g., Dees v. State*, 295 So.2d 296 (Fla.1974).

be used as evidence. A violation report does not require a catalog of all the evidence to be used at the revocation hearing.

■ The second issue raised by Hass is whether the district court abused its discretion by revoking probation and imposing the previously suspended sentences. Revocation of probation is within the discretion of the district court and may occur at any time during the probationary period if the probationer has violated any of the terms of the probation. I.C. § 20–222; *State v. Case*, 112 Idaho 1136, 739 P.2d 435 (Ct.App.1987). In a review of the district court's discretion, our inquiry is whether the court acted within the boundaries of such discretion, consistent with any legal standards applicable to its specific choices, and whether the court reached its decision by an exercise of reason. *See* Standards of Appellate Review in State and Federal Courts, § 3.4, IDAHO APPELLATE HANDBOOK (Idaho Law Foundation, Inc. 1985). Under I.C. § 20–222 the court in making its decision examines whether the probation is achieving the goal of rehabilitation and is consistent with the protection of society. *State v. Phillips*, 113 Idaho 176, 742 P.2d 431 (Ct.App.1987); *State v. Grove*, 109 Idaho 372, 707 P.2d 483 (Ct. App.1985).

■ In its decision, the district court noted that this was the third violation of probation by Hass. The court also noted that Hass had continued to engage in counterproductive acts, including consorting with individuals who made adherence to his probation requirements difficult. From this, the court concluded that probation should be revoked. We find no abuse of discretion.

■ Finally, Hass asserts that the district court erred in revoking probation without making a specific finding that Hass could not possibly perform the fundamental conditions of his probation. He contends that such a finding is required by *State v. Bell*, 103 Idaho 255, 646 P.2d 1026 (Ct.App.1982). We disagree. Our decision in *Bell* was not intended to create such a requirement. The court is only required under I.C. § 20–222 to act within the bounds of its discretion under the statute and to reach its decision by an exercise of reason. The record is clear that the district court did just this. The court examined the goals of Hass' probation, his repeated violations, and determined that the goals had not been achieved.

The order of the district court is affirmed.

WALTERS, C.J., and BURNETT, J., concur.